**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

JOHN SIMMONS                                         CIVIL ACTION

VERSUS                                                    18-272-SDD-EWD

GREYHOUND LINES, INC.


<u>**RULING**</u>

This matter is before the Court on the *Motion for Summary Judgment*[1] by

Defendant, Greyhound Lines, Inc. ("Defendant" or "Greyhound"). Plaintiff, John Simmons

("Plaintiff") has filed an *Opposition*[2] to this motion, to which Defendant filed a *Reply*.[3] For

the following reasons, the Court finds that Defendant's motion should be granted.

**I.     PLAINTIFF'S FAILURE TO SUBMIT OPPOSING STATEMENT OF MATERIAL
        FACTS**

As Defendant notes, despite being granted *three* extensions to file his *Opposition*,

Plaintiff failed to file an Opposing Statement of Disputed Facts as required by the Local

Rules of this Court. In opposing a motion for summary judgment, a party is required under

local Rule 56(b) to:

> submit with its opposition a separate, short, and concise statement of
> material facts. The opposing statement shall admit, deny or qualify the facts
> by reference to each numbered paragraph of the moving party's statement
> of material facts and unless a fact is admitted, shall support each denial or
> qualification by a record citation as required by this rule. Each such
> statement shall begin with the designation "Admitted," "Denied," or
> "Qualified" and, in the case of an admission, shall end with such

---

[1] Rec. Doc. No. 15.
[2] Rec. Doc. No. 25.
[3] Rec. Doc. No. 29.
Document Number: 58236

designation. The opposing statement may contain in a separately titled section additional facts, each set forth in a separately numbered paragraph and supported by a record citation as required by subsection (f) of this rule.

As Plaintiff failed to comply with this rule, Defendant is correct that the Court must deem admitted its record-supported statements of undisputed fact. Rule 56(f) provides:

> Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted. An assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion. The court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment. The court shall have no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts.

However, according to Fifth Circuit jurisprudence, in such instances the Court can still consider record evidence to determine if there is a factual dispute.[4] To the extent Plaintiff expressly directs the Court to specific record evidence that controverts Defendant's statement of facts, the Court will consider those statements opposed. The Court will deem admitted Defendant's Statement of Undisputed Facts that are not contradicted by specific record evidence and to which the Court is specifically directed.

## II. FACTUAL BACKGROUND

On or about November 12, 1997, Plaintiff was hired by Greyhound as a Customer Service Associate, commonly referred to as a baggage handler, at its Baton Rouge, Louisiana Terminal.[5] Plaintiff maintained this position as a baggage handler throughout

---

[4] *See Smith v. Brenoettsy*, 158 F.3d 908, 910 (5th Cir. 1998) (holding, where plaintiff failed to oppose the motion for summary judgment, that facts in "Statement of Undisputed Facts" were admitted, "except to the extent that the 'facts' in the 'Statement of Undisputed Facts' are contradicted by 'facts' in other materials attached to his motion for summary judgment." (citation omitted)).

[5] Plaintiff Deposition, 7:16-25, 8:1-4; Ex. B-7, EEOC Charge.

his entire career with Defendant except for a short period of time when Plaintiff worked as a cashier.[6] Plaintiff was born on January 10, 1956; thus, he was forty-one (41) years of age at the time he was hired and sixty-one (61) years of age at the time he was terminated.[7]

Defendant contends Plaintiff has had a long history of performance problems throughout his employment. For example, in April of 2000, then-Manager Larry Holt ("Holt") placed Plaintiff on a one-day suspension for insubordination following Plaintiff's refusal to clean the terminal, confrontations with food service employees, and refusing to assist a customer after she spilled water on the terminal floor.[8]

In 2000, Plaintiff's performance appraisal was completed by then-Supervisor Keith Hutchison ("Hutchinson"), who documented that Plaintiff needed improvement with regard to bus loading and unloading; incomplete work; and stated Plaintiff was "very lazy," "has a problem with authority," was "not a team player," and "does not get along with fellow employees."[9] Ultimately, in 2000, Plaintiff received an overall performance rating of 2.42 out of possible 5.0 and was classified as "Needs Improvement."[10]

In 2003, Holt discussed with Plaintiff, on several occasions, that he needed to improve his job performance.[11] Also, in May of 2003, Plaintiff received disciplinary counseling from Hutchison for being rude and refusing to assist a customer.[12] Plaintiff

---

[6] Plaintiff Deposition, pp. 7:24-25, 8:1-3.
[7] *Id.* at 10:4-7.
[8] *Id.* at 17:21-25, 18:1-20; Ex. A, Plf. Depo. 17:3-20, Ex. B-1, Dep. Ex. No. 3 to Plf. Depo.
[9] *Id.* at 19:17-25; 20:1-25, 21:1-25, 22:1-2.
[10] *Id.* at 21:23-25; 22:1-2, Ex. B-2, Dep. Ex. 4 to Plf. Depo.
[11] *Id.* at 23:1-22.
[12] *Id.* at 24:15-25, 25:1-10, Ex. B-3, Dep. Ex. No 6 to Plf. Depo.
Document Number: 58236

admits that he was warned numerous times about poor customer service as of May 2003.[13]

Defendant maintains that, in 2012, more than one supervisor had concerns about Plaintiff carrying around a cup of coffee instead of using both hands to load and unload busses, and he was counseled accordingly. This counseling was provided in Plaintiff's 2012 performance review by then-Supervisor Oscar Watson ("Watson") and also via a verbal counseling note documented by a prior supervisor in 2003.[14]

In 2013, Plaintiff again received a less than satisfactory Performance Review from Watson. Watson gave Plaintiff an overall rating of 2.1 out of 4.0. The review specifically documented that Plaintiff "needs improvement," just does "what he wants to do," has a problem with being a team player, and speaks to customers "not in a professional manner."[15] In October of 2013, Plaintiff received a corrective action notice from Watson for wiping down his personal vehicle on Company time and disregarding Company policy and procedure.[16]

During the summer of 2016, Plaintiff began reporting to Jo Ann Guillory ("Guillory") (African American, Age 51) when she was hired as the Manager for Defendant's Baton Rouge Terminal.[17] Guillory, in turn, reported to Regional Customer Experience Manager Emma Gray ("Gray")(African American, Age 68).[18] When Guillory began her employment with Defendant, Guillory testified that Plaintiff told her that he did not like working for

---

[13] *Id.* at 25: 15-19.
[14] *Id.* at 33:10-21.
[15] *Id.* at 37:6-25, 38:1-25, 39:1-6; Ex. B-4, Dep. Ex. No. 9 to Plf. Depo.
[16] *Id.* at 44:7-25, 45:1-2.
[17] *Id.* at 46: 24-25, 47:1-18.
[18] Gray Declaration.
Document Number: 58236

women and that he would probably "have a problem" because he had never worked for a woman.[19]  Despite his gender inappropriate remarks, Defendant maintains that Guillory reviewed Plaintiff's disciplinary history and the documentation concerning his need to improve his performance; yet, she advised Plaintiff that she wanted to give him a "fresh start."[20]  Shortly after Guillory began working for Greyhound in June of 2016, she gave Plaintiff an overall performance rating of "performing well."[21]

However, not long after she began supervising Plaintiff, Guillory began to observe some of the same conduct for which he was previously disciplined.[22]  On or about November 18, 2016, Plaintiff received a written warning from Guillory for arriving at work, punching the time clock, and then taking an unauthorized break instead of assisting a customer; and for not arriving to work properly dressed in his uniform.[23]

Plaintiff admits he had no rights to seniority over other employees as it pertained to shift assignment, based on any Greyhound rule or policy, nor based upon any collective bargaining agreement.[24]  Plaintiff also admits Guillory regularly rotated employees for assignments to the morning, afternoon, and evening shifts, and that he, along with other employees, were all on regular rotations for the various shifts.[25]

Defendant claims that, based on the above, it is clear that, throughout Plaintiff's employment, he reported to multiple supervisors that issued disciplinary actions to him based upon poor performance of his job duties. Specifically, he received at least five

---

[19] Guillory Deposition, 126:21-25; 127:1-1-4.
[20] *Id.* at 128:1-20; 138:9-14.
[21] *Id.* at 158:15-17; 159:14-18.
[22] *Id.* at 165:3-22; 167:10-15; 212:1-17.
[23] Plaintiff Deposition, 58:6-25; 59:1; Ex. B-5, Dep. Ex. No. 12 to Plf. Depo.
[24] *Id.* at 65:14-24, 84:8-12.
[25] *Id.* at 86:1-18.
Document Number: 58236

instances of corrective action (including at least one suspension), and multiple comments on his performance reviews which documented consistent concerns about his poor job performance, insubordination, and unprofessional behavior.[26]

Things came to a head on March 20, 2017, when Plaintiff was assigned to work the night shift but failed to appear for work or notify his manager, leaving the Greyhound terminal unmanned overnight. Plaintiff arrived at the terminal, reviewed the schedule, and left.[27] Plaintiff admits he did not report to work for his scheduled shift, and he admits that he did not call in to management prior to or following the missed shift.[28]

When Guillory arrived to work the following morning, the terminal had not been cleaned, and the trash had not been discarded.[29] Because Plaintiff did not show up for his assigned shift, the terminal had been left unattended for the entire night, with no Greyhound employees present to assist customers. The only attendant present at the terminal was a non-employee security guard.[30] When Guillory confronted Plaintiff about not showing up for work, Plaintiff admits that he responded, "what if I told you I just overslept, would that be a good reason for you?"[31]

Guillory conferred with Gray, her supervisor, regarding the appropriate disciplinary action for Plaintiff's conduct, and the decision was made to terminate Plaintiff's employment.[32] Thus, Plaintiff was terminated, effective March 21, 2017, for insubordination, failure to show up for his scheduled shift, and failure to notify

---

[26] *Id.* at 81:3-9.
[27] *Id.* at 67:21-23.
[28] *Id.* at 63:1-9, 65:25, 66:1-9, 68:3-7.
[29] *Id.* at 65:24, 66:1-9.
[30] *Id.* at 66:10-15, Ex. C. Guillory Depo. 207:7-14.
[31] *Id.* at 74:1-6.
[32] Guillory Declaration; Gray Declaration.
Document Number: 58236

management of his absence.[33]  Defendant maintains that Plaintiff's age played no part in the decision to terminate him.[34]

In his deposition, Plaintiff recounted times he heard Guillory make allegedly age-related remarks to him.  However, Defendant argues that Plaintiff generically states that these comments were made "constantly," yet he never identifies any specific date, and fails to demonstrate any alleged connection between the comments and his termination.[35] Guillory denies making any comment regarding Plaintiff's age, telling him to retire, or calling him stupid.[36]  Plaintiff also fails to provide any testimony that would connect these alleged stray remarks with the timing of his termination or the events that led to his termination.

Simply put, accordingly to Defendant, Plaintiff admits that he failed to show up for his scheduled shift and admits he did not call in to notify anyone that he would miss his shift, leaving the Baton Rouge Terminal without a Greyhound employee that evening.[37] Defendant notes, in fact, that at the time of Plaintiff's termination, he acknowledges that the only thing Guillory said to him after confronting him about not showing up for work was that he should have called in.[38]

Defendant also points out that Plaintiff never filed a complaint for age discrimination with Human Resources or Defendant's Ethics Hotline.  Plaintiff admits that he received a copy of Defendant's Employee Handbook and acknowledged its receipt.[39]

---

[33] Plaintiff Deposition, 68:15-18, 75:5-7.
[34] Guillory Declaration; Gray Declaration.
[35] Plaintiff Deposition, 51:2-12, 56:24-25, 57:14-17, 62:21-23.
[36] Guillory Deposition, 121:12-25, 122:1-23.
[37] Plaintiff Deposition, 63:1-9, 65:25, 66:1-9, 68:3-7.
[38] *Id.* at 67:21-68:9.
[39] *Id.* at 13:20-25, 14:1-12.
Document Number: 58236

Plaintiff had knowledge of, and stated he understood, Defendant's policy prohibiting harassment and discrimination in the workplace, as well as the reporting procedures.[40] Plaintiff further admits this policy was a "zero tolerance" policy.[41]  Nevertheless, prior to Plaintiff's termination, it is undisputed that he never made any complaint of discrimination or harassment to Human Resources or the Company Hotline.[42]

Attempting to controvert some of Defendant's purported facts, Plaintiff cites to the deposition testimony of himself, Guillory, and another supervisor in his *Opposition*.[43] Plaintiff testified that Guillory was "constantly telling me that I was old enough to be her father and that I need to retire and that I was incompetent."[44]  Plaintiff testified that Guillory said he was old enough to be her father "about three, four times a month."[45]  Plaintiff further testified that Guillory told him, with no witnesses present, that "she needed some white – young white person or young white people in there.  And she just need [sic] young folks."[46]

Additionally, Plaintiff claims that, despite Defendant's negative characterization of his work history, Guillory essentially described Plaintiff as a model employee in his 2016 Performance and Development Plan ("PDP"), stating that Guillory described Plaintiff as: "punctual and properly dressed; does a good job in his assigned roles; seeks assistance form management when needed; very helpful and offers assistance to our passengers,

---

[40] *Id.* at 14:19-25, 15:1-25, 16:1-10.
[41] *Id.* at 15:14-21.
[42] *Id.* at 69:20-23, 70:1, 81:20-25, 82:1-4.
[43] The Court will only reference Plaintiff's argued facts that are supported by citation to record evidence. The Court will not consider unsupported and/or undocumented arguments or purported statements of fact offered by counsel.
[44] Plaintiff Deposition, 51:2-4; 56:24-25.
[45] *Id.* at 51:12.
[46] *Id.* at 57:14-17.

Document Number: 58236

when needed; always on time for work; has maintained a good attitude during the management transition; and willing to work day and evening shifts."[47]  Plaintiff offers the deposition testimony of Betty McGee ("McGee"), another of his female supervisors, who described Plaintiff as a hard worker that rarely missed a day of work.[48]  Further, although she acknowledged that Plaintiff had previously been written up by former Terminal Managers, McGee testified that she, a twenty-year employee, had also been written up on several occasions and was even suspended once, but she never lost her job.[49]  McGee also testified generally that Plaintiff followed orders and had no problem getting to work on time or working on weekends.[50]  McGee further testified that she never heard Guillory complain about Plaintiff.[51]

Plaintiff also argues that McGee's testimony demonstrates that Greyhound had "an established protocol" for handling a situation when an employee does not show up for the midnight shift, and Guillory failed to follow this protocol.[52]  Further, Plaintiff contends that Guillory was under investigation by Greyhound regarding another matter, and she was dishonest in her deposition about her knowledge of this investigation; thus, she lacks credibility, and her testimony regarding Plaintiff's termination is unreliable.

On or about April 5, 2017, Plaintiff filed his first Charge of discrimination with the EEOC based upon his race (African American/black). The Charge does not reference or mention Plaintiff's age in any way as a basis for discrimination. It reveals only claims that

---

[47] Rec. Doc. No. 25 (citing Exhibit A, pg. 141-163, Exhibit 2).
[48] Betty McGee Deposition pg. 33, 163.
[49] *Id.* at pg. 121-123.
[50] *Id.* at pg. 177, 181, 186.
[51] *Id.* at pg. 163.
[52] Rec. Doc. No. 25, p. 3.
Document Number: 58236

he was terminated based upon his race by Guillory, and he describes her as a "white manager."[53]   After filing the April 5, 2017 Charge, however, Plaintiff testified that he learned from a former coworker that Guillory was not, in fact, white.[54]   After Plaintiff learned that Guillory was not white, he filed a second Charge of discrimination with the EEOC, on July 19, 2017, this time alleging that his termination was based on his age, not his race.[55]   Upon receipt of a Right to Sue letter, Plaintiff originally filed this lawsuit on December 20, 2017, in state court alleging the Defendant violated the Louisiana Age Discrimination and Employment Act ("LADEA").[56]

On March 9, 2018, Defendant removed this matter to this Court on the basis of diversity jurisdiction.[57]   The LADEA makes it unlawful to "fail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of the individual's age."[58] Although Plaintiff has not asserted a claim under the federal Age Discrimination in Employment Act ("ADEA"),[59] the Louisiana Supreme Court has noted that, "[b]ecause Louisiana's prohibition against age discrimination is identical to the federal statute prohibiting age discrimination, Louisiana courts have traditionally looked to federal case law for guidance."[60] Therefore, Plaintiff's LADEA claim will be analyzed under federal ADEA law and jurisprudence.

---

[53] Plaintiff Deposition, 75:8-76:23, Ex. B-7, Dep. Ex. No. 14 to Plf. Depo.
[54] *Id.* at 77:1-11.
[55] *Id.* at 78:21-79:1; Ex. B-8.
[56] Rec. Doc. No. 1-2, ¶ 32.
[57] Rec. Doc. No. 1, p. 2.
[58] La. R.S. 23:312.
[59] 29 U.S.C. 621, *et seq.*
[60] *LaBove v. Raftery*, 2000-1394 (La. 11/28/01), 802 So. 2d 566, 573 (also citing *King v. Phelps Dunbar*, L.L.P., 98–1805 (La.6/4/99), 743 So.2d 181, 187; see also *Barbe v. A.A. Harmon & Co.,* 94–2423 (La.App. 4 Cir. 1/7/98), 705 So.2d 1210, *writ denied*, 98–0526 (La.5/15/98), 719 So.2d 462).
Document Number: 58236

## III.  LAW & ANALYSIS

### A.  Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[61]  "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence."[62]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[63]  If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[64]  However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[65]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[66]  All reasonable factual inferences are drawn in favor of the nonmoving party.[67]  However, "[t]he Court has no

---

[61] Fed. R. Civ. P. 56(a).

[62] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).

[63] *Guerin v. Pointe Coupee Parish Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. 2003)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. at 2552)).

[64] *Rivera v. Houston Independent School Dist.,* 349 F.3d 244, 247 (5th Cir. 2003)(quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

[65] *Willis v. Roche Biomedical Laboratories, Inc.,* 61 F.3d 313, 315 (5th Cir. 1995)(quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[66] *Pylant v. Hartford Life and Accident Insurance Company*, 497 F.3d 536, 538 (5th Cir. 2007)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

[67] *Galindo v. Precision American Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).

Document Number: 58236

duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[68] "Conclusory allegations unsupported by specific facts … will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations … to get to a jury without any "significant probative evidence tending to support the complaint."'"[69]

### B. Discrimination under the ADEA[70]

The ADEA makes it "unlawful for an employer to fail or refuse to hire ... any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[71] The United States Court of Appeals for the Fifth Circuit has held that when making a claim of age discrimination, "the plaintiff has the burden of persuasion to show 'that age was the **'but-for' cause** of [his] employer's adverse action.'"[72]

A plaintiff may prove a case by direct or circumstantial evidence.[73] Evidence is direct when it "proves the fact of discriminatory animus without inference or presumption."[74] Evidence is circumstantial when an inference is required for the evidence

---

[68] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

[69] *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994)(quoting *Anderson*, 477 U.S. at 249).

[70] Although Defendant moves for summary judgment on an ostensible hostile work environment claim under the ADEA based on certain allegations in the *Complaint*, the Court finds that Plaintiff failed to assert such a claim, and further, Plaintiff abandoned any such claim by failing to argue it in his *Opposition*.

[71] 29 U.S.C. § 623(a)(1).

[72] *Salazar v. Cargill Meat Sols. Corp.,* 628 F. App'x 241, 244 (5th Cir. 2015) (citing *Jackson v. Cal–W. Packaging Corp.*, 602 F.3d 374, 377 (5th Cir.2010) (quoting *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 177, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009))(emphasis added).

[73] *Allain v. Board of Supervisors of University of Louisiana System*, 81 F.Supp.3d 502, 509 (quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)).

[74] *Id.* (quoting *Terry v. Promise Hosp. of Ascension, Inc.*, CIV.A. No. 13–128–SDD, 2014 WL 4161581, at *5 (M.D.La. Aug. 19, 2014)).

Document Number: 58236

to tend to prove discriminatory animus.[75] For comments to constitute direct evidence of age discrimination, they must be "1) age related; 2) proximate in time to the termination; 3) made by an individual with authority over the employment decision at issue; and 4) related to the employment decision at issue."[76]

To make out a *prima facie* case of discriminatory treatment, the plaintiff must show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age."[77] Once the plaintiff makes out a *prima facie* case, "the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision."[78] If the employer satisfies this obligation, the plaintiff is "afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."[79]

### 1.   Direct Evidence/Stray Remark Doctrine

Plaintiff claims his testimony regarding Guillory's age-related comments to and about him constitutes direct evidence of age discrimination. Plaintiff testified that Guillory was "constantly telling me that I was old enough to be her father and that I need to retire and that I was incompetent,"[80] and Guillory allegedly said that "she needed some white –

---

[75] *Id.* (citing *Terry*, 2014 WL 4161581, at *5).
[76] *Id.* (quoting *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 441 (5th Cir. 2012) (citing *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (*abrogated on other grounds by Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx. 416, 419 (5th Cir. 2009))).
[77] *Jackson*, 602 F.3d at 378 (internal quotation marks omitted).
[78] *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007).
[79] *Moss v. BMC Software, Inc.*, 610 F.3d at 922 (5th Cir. 2010).
[80] Rec. Doc. No. 26-2, Plaintiff's Deposition, p. 51, lines 2-4; *see also*, p. 56, lines 24-25.
Document Number: 58236

young white person or young white people in there."[81]  Defendant maintains that, even accepting as true that Guillory made such comments, which is denied, such comments constitute only stray remarks and are not direct evidence or pretext evidence of age discrimination.

Where a plaintiff "presents direct evidence of discrimination, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'"[82]  Fifth Circuit precedent further instructs that, in determining whether a workplace comment constitutes "direct evidence" of discrimination, rather than a "stray remark," a court must consider whether the comment: (1) relates to the plaintiff's protected characteristic; (2) was made proximate in time to the challenged employment decision; (3) was made by an individual with authority over the challenged employment decision; and (4) relates to the challenged decision.[83] "Generally, '[d]irect evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption.'"[84]

Although Defendant provided thorough argument and jurisprudence supporting its contention that the alleged age-related statements made by Guillory constitute stray remarks, Plaintiff ignored this argument entirely and stated: "To be sure, the deposition testimony of Mr. Simmons himself is strong evidence that JoAnn Guillory harbored a

---

[81] *Id.* at p. 57, lines 14-17.
[82] *Etienne v. Spanish Lake Truck & Casino Plaza, L.L.C.*, 778 F.3d 473, 475 (5th Cir. 2015) (quoting *Brown v. E. Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir. 1993)).
[83] *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 222 (5th Cir. 2001)).
[84] *Martin v. Winn-Dixie Louisiana, Inc.*, 132 F.Supp.3d 794, 817 (M.D. La. 2015)(quoting *Rudin v. Lincoln Land Cmty. Coll.*, 420 F.3d 712, 720 (7th Cir. 2005)).
Document Number: 58236

desire to terminate his employment."[85]  Plaintiff does not provide jurisprudential support for this claim.

First, the Court notes that calling Plaintiff incompetent is not an age-related comment.  Second, it is well-settled that questioning an employee about retirement does not constitute direct evidence of age discrimination.  In *Covington v. Keith D. Peterson & Co., Inc.*,[86] the plaintiff alleged that "she was repeatedly questioned on many occasions as to when she would retire from employment."[87]  However, based on Fifth Circuit precedent, the court held "this is not direct evidence of age discrimination 'because it requires one to infer that [she] was fired because of [her] age based on [her employer's] comment that it was time for [her] to retire.'"[88]  The *Covington* court continued:  "'There is a link between retirement and age, but it is not a necessary one.'"[89]  Thus, the court found that the evidence offered was circumstantial, and the *McDonnell Douglas* framework applied.

Third, Plaintiff has failed to demonstrate that the alleged comment that he was old enough to be Guillory's father constitutes direct evidence of age discrimination.  Notably, Plaintiff never addresses the four elements that he must demonstrate to establish that the alleged comments constitute direct evidence.  Moreover, the record evidence to which Plaintiff cites does not support his claim.

---

[85] Rec. Doc. No. 25, p. 5.

[86] 2011 WL 6152861 (W.D. La. Dec. 12, 2011).

[87] *Id.* at *2.

[88] *Id.* (quoting *Martin v. Bayland Inc.*, 181 Fed. Appx. 422, 424 (5th Cir.2006) (Finding that an employer's comment that "I think it's time to hang it up and you-for you to retire" did not constitute direct evidence of age discrimination).

[89] *Id.* (quoting *Martin*, 181 Fed. Appx. at 424; *see also Scott v. Potter*, 182 Fed. Appx. 521, 526 (5th Cir.2006) (Finding the statement "Why don't you retire and make everybody happy" was not direct evidence of age discrimination.)).

Document Number: 58236

The Fifth Circuit recently opined that, "[i]n direct evidence cases, comments must meet a **demanding standard** because the plaintiff relies on them 'to prove the entire case of discrimination.'[90]  For age-related comments to show pretext in a direct evidence case, they must be more than 'stray remarks.'"[91] Further, "[t]o rise above the level of a stray remark, an age-related comment must 'be direct and unambiguous, allowing a reasonable jury to conclude without any inferences or presumptions that age was an impermissible factor in the decision to terminate the employee.'"[92]

Plaintiff fails to point to summary judgment evidence establishing that any of these comments were "proximate in time to the employment decision," or "related to the employment decision at issue."[93]  Although Plaintiff testified that these comments were made "constantly," Plaintiff provides no evidence of the timing of the comments, and this vague assertion fails to establish under the demanding direct evidence standard that such comments were made proximately near his termination or that they were related to his termination.[94]

In *Hedgemon v. Madison Parish School Board*, the seventy-five year-old plaintiff brought an ADEA claim against her employer school system, alleging that comments such as being referred to as "something old" and a question by the superintendent regarding why the school employed "all these retired people" constituted direct evidence

---

[90] *McMichael v. Transocean Offshore Deepwater Drilling, Incorporated*, 934 F.3d 447, 457 (5th Cir. 2019)(quoting *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475 (5th Cir. 2015))(emphasis added).
[91] *Id.* (citing *E.E.O.C. v. Tex. Instruments*, 100 F.3d 1173, 1181 (5th Cir. 1996)("This court has repeatedly held that 'stray remarks' do not demonstrate age discrimination.").
[92] *Id.* (quoting *Tex. Instruments*, 100 F.3d at 1181).
[93] *See* note 92, *supra*.
[94] *See e.g.*, *Williams v. Clegg's Nursery, LLC*, 2016 WL 3702978, at *11 (M.D. La. July 7, 2016)(Plaintiff who asserted she was "constantly" subjected to age-related comments submitted "no evidence in the record that the statements cited by Plaintiff occurred near the time of her termination.").

Document Number: 58236

of age discrimination.[95]  The court noted that the record established that the "something old" comment was made twenty-two months prior to the plaintiff's termination; thus, it was "an interval too great for the comment to relate proximally to her discharge."[96]  As for the "retired people" comment, the court noted that the plaintiff failed to specify when the superintendent made this comment; "[t]hus, there is no evidence that [the superintendent] made the comment near the time of [the plaintiff's] discharge."[97]  The court also found that the plaintiff had not presented evidence that the comments were related to the plaintiff's discharge.[98]

The same is true in the present case.  Although Plaintiff vaguely asserts that these comments were made "constantly," which he defines as "about three, four times a month,"[99]  Plaintiff never specifies a time near his discharge; thus, he has failed to meet his burden to show that the comment was proximally related to his termination because he failed to establish when such comments were actually made.  Because Plaintiff has only submitted circumstantial evidence related to his age, the Court turns to analysis of the *McDonell Douglas* burden-shifting framework.

---

[95] 2015 WL 4094701, at *3 (W.D. La. July 7, 2015).

[96] *Id.* at * 5 (citation omitted).

[97] *Id.* (citing *Rubinstein v. Administrators of Tulane Educ. Fund*, 218 F.3d 392, 401 (5th Cir. 2000) (plaintiff did not meet his burden to show that the comment was proximally related to the adverse job action when he failed to establish when the comment was made)).

[98] *Id.* ("Finally, there is no indication that Wilmore's comments related to Hedgemon's discharge. *See Hamilton*, 593 F. App'x at 323 (no evidence that decisionmaker's comment that a work crew was comprised of a single race was related to plaintiff's termination, even though plaintiff belonged to the same race as the work crew); *Jackson, supra* (comment that plaintiff was an "old, gray-haired fart" was not related to plaintiff's subsequent discharge)).

[99] Rec. Doc. No. 26-2, Plaintiff's Deposition, p. 51, line 12.

Document Number: 58236

## 2. Legitimate Non-Discriminatory Reasons for Termination

Defendant concedes that Plaintiff has met his *prima facie* burden for an age discrimination case by going directly to offering evidence of its legitimate, non-discriminatory reasons for terminating Plaintiff. Defendant maintains that Plaintiff's insubordination, failure to show for his shift on March 20, and failure to call in regarding same leaving the terminal without any Greyhound employees to assist customers, were the reasons Plaintiff was terminated, a decision not motivated in any way by Plaintiff's age.[100] Defendant points to Guillory's deposition testimony that she wanted to give Plaintiff a final warning after the March 20 incident, but her supervisor, Emma Gray, instructed Guillory to terminate Plaintiff.[101] Considering Plaintiff's well-documented history of insubordination, unprofessional behavior, and prior performance counseling and write-ups,[102] Gray determined that Plaintiff would not be given an additional warning.[103] Notably, Plaintiff offers no summary judgment evidence to controvert that Gray made the final decision to terminate Plaintiff.

Plaintiff readily admits that he failed to report for this scheduled shift and failed to call in to management regarding same, giving the excuse that he overslept.[104] Plaintiff admitted that he could not dispute Guillory's testimony that, when she arrived to work following the March 20 night shift, the terminal had not been cleaned, the trash had not been discarded, and no Greyhound employee had been at the terminal the entire night.[105]

---

[100] *See* Guillory Deposition, 207-209; Guillory Declaration, Rec. Doc. No. 15-2, p. 119.
[101] *Id.* at 209:3-10.
[102] Plaintiff Deposition, 81:3-9.
[103] Gray Declaration, ¶ 3.
[104] Plaintiff's Deposition, 63:1-12.
[105] *Id.* at 66.
Document Number: 58236

Further, although Plaintiff argues that he was a "model employee," his documented disciplinary record, which he admittedly failed to contradict, demonstrates otherwise. Plaintiff admitted that he had a history of negative comments on past performance reviews and received disciplinary counseling and write-ups, specifically "five instances from early on in your employment through Ms. Guillory, prior to your termination, where you were written up or counseled regarding workplace issues."[106] Moreover, Plaintiff admitted that the negative comments were made by several supervisors during his employment with Defendant, not just Guillory. Indeed, the evidence demonstrates that Plaintiff received disciplinary write-ups, including a suspension, from at least three supervisors prior to Guillory.[107]

Accordingly, the Court finds that Defendant has submitted summary judgment evidence of legitimate, non-discriminatory reasons for terminating Plaintiff. The Court now turns to Plaintiff's contention that these reasons were a pretext for age discrimination.

### 3. Pretext

Plaintiff essentially[108] argues that the following constitute evidence of pretext: (1) the alleged age-related remarks made by Guillory; (2) Guillory's alleged lack of credibility based on her initial positive performance review of Plaintiff and her "denial" of knowledge that she had also been investigated by Defendant; (3) a younger employee who missed a shift was not immediately terminated; and (4) a suggestion that Defendant departed

---

[106] *Id.* at 81:3-9.
[107] *Id.* at 19-25; 33; 37-39.
[108] The Court gleans these arguments from Plaintiff's entire brief as they are not clearly argued or submitted in support of Plaintiff's pretext argument by the two paragraphs in his *Opposition* under this heading. Rec. Doc. No. 25, p. 7.
Document Number: 58236

from its standard policy and procedure in the manner that Plaintiff's missed shift protocol and termination was handled, based solely on the testimony of McGee.

### a. Failure to Rebut Legitimate, Nondiscriminatory Reasons

First, the Court finds that Plaintiff fails to carry his burden because he has failed to present evidence rebutting each of the nondiscriminatory reasons offered by Defendant for his termination. Indeed, Plaintiff's own testimony confirmed the conduct upon which his termination was based. The Fifth Circuit requires that Plaintiff "must present evidence rebutting each of the nondiscriminatory reasons offered by the employer.[109] Further, "[w]here a plaintiff 'falls short of [his] burden of presenting evidence rebutting *each* of the legitimate, nondiscriminatory reasons produced by [the employer],' summary judgment is appropriate."[110] Accordingly, Plaintiff's failure to present controverting evidence to rebut his prior disciplinary record of insubordination and performance problems, along with his failure to show/report for the March 20 shift, renders summary judgment appropriate in favor of Defendant.

### b. Stray Remarks

Second, the Court has already determined that the age-related comments allegedly made by Guillory constitute nothing more than stray remarks. Notably, the Fifth Circuit "has repeatedly held that 'stray remarks' do not demonstrate age discrimination."[111] Additionally, "stray remarks cannot be the only evidence of pretext."[112]

---

[109] *Williams v. Clegg's Nursery,* 2016 WL 3702978, at *9 (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)).
[110] *Id.* (quoting *Jackson v. Watkins*, 619 F.3d 463, 467 (5th Cir. 2010) (emphasis in original)).
[111] *Broussard v. Jazz Casino Co. LLC*, 2018 WL 6046171 at *3 (E.D. La. Nov. 19, 2018)(quoting *Tex. Instruments*, 100 F.3d at 1181)).
[112] *Id.* (citing *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003); *Paulissen v. MEI Techs., Inc.*, 942 F. Supp. 2d 658, 670–71 (S.D. Tex. 2013)).

Document Number: 58236

## c. Guillory's Credibility

Next, Plaintiff attempts to impugn Guillory's credibility by discussing a portion of Guillory's deposition testimony wherein she is questioned about an investigation by Defendant of which Guillory was presumably the target.[113] Guillory's deposition testimony reveals that Defendant's investigation centered around Greyhound employees allowing an unauthorized person to conduct business on Greyhound property.[114] From this testimony, Plaintiff argues in his brief: "When asked about the investigation, even though the documents clearly demonstrate that she was repeatedly asked questions about her conduct and that she resigned while the investigation was ongoing, she testified that she knew nothing about the investigation. Simply put, she lied. Regarding her written reasons for terminating Mr. Simmons' employment, she lied again."[115]

However, Plaintiff's interpretation of Guillory's testimony is not an accurate reflection of her actual testimony, which the Court reviewed in full. Guillory's actual testimony was that she was being presented with forms by Plaintiff's counsel that she had never seen before and/or which did not bear her name.[116] Guillory did, in fact, acknowledge that, based on the form presented, she may have been the unnamed manager in the investigation report that resigned.[117] Further, Guillory acknowledged that she conducted an investigation "and found that employees were allowing someone to work," and Plaintiff "was actually one of those employees that allowed a homeless man

---

[113] Guillory Deposition, Exhibit A, pg. 182-193. Curiously, the investigation documents about which Guillory was questioned during her deposition are not submitted as an exhibit to Plaintiff's *Opposition*.
[114] *Id.* at pp. 185-188.
[115] Rec. Doc. No. 25 at pp. 2-3.
[116] Rec. Doc. No. 26, Guillory Deposition, pp. 182-184.
[117] *Id.* at p. 185.
Document Number: 58236

to conduct work."[118]    Guillory testified that she was unaware of other Greyhound personnel investigating the matter and had not seen the documents being presented to her.[119]  Plaintiff's bold assertion that, "[s]imply put, she lied," is a self-serving, conclusory interpretation of Guillory's testimony not supported by the actual record.

More importantly, Plaintiff asks the Court to make a credibility determination based on disputed facts, not shown to be material, which is inappropriate on summary judgment. Moreover, even assuming Plaintiff's interpretation of Guillory's testimony is correct regarding the investigation, Plaintiff fails to establish how this creates genuinely disputed fact issues regarding his own termination.   Indeed, Plaintiff fails to demonstrate any relevance between the purported investigation of Guillory and her subsequent resignation and Plaintiff's uncontroverted employment history, conduct, and termination.   It is axiomatic that "[a]rguments by counsel in a brief do not constitute summary judgment evidence[.]"[120]  Indeed, it is "well established that arguments set forth in a brief in response to a motion for summary judgment, unsupported by ... adequate summary judgment evidence, are insufficient to raise genuine issue of material fact to defeat a properly supported motion for summary judgment."[121]    Thus, Guillory's alleged lack of credibility is not only an improper determination for the Court to make on summary judgment, but, accepting Plaintiff's interpretation as true, Guillory's testimony regarding this investigation does not demonstrate a material fact dispute regarding Plaintiff's termination.

---

[118] *Id.* at p. 185, line25 through p. 186, lines 1-4.
[119] *Id.*
[120] *Clark v. RailCrew Xpress, L.L.C.*, 2018 WL 5269365 at *5 (M.D. La. Oct. 23, 2018).
[121] *Hockaday v. Tx. Dep't of Criminal Justice*, 914 F. Supp. 1439, 1446 (S.D. Tex. 1996).
Document Number: 58236

### d. Disparate Treatment/Proper Comparators

Next, without citation to any record evidence whatsoever, Plaintiff states in his *Opposition* that similarly situated employees younger than Plaintiff were treated more favorably although they engaged in similar conduct.[122]  Courts within the Fifth Circuit define "similarly situated" narrowly.[123]  In evaluating whether an alleged comparator is similarly situated,

> "The employment actions being compared will be deemed to have been taken under **nearly identical circumstances** when the employees being compared held the same job or responsibilities, shared the same supervisor [,] or had their employment status determined by the same person[.]"[124] "Employees with different supervisors, who work for different divisions of a company ... generally will not be deemed similarly situated." The Fifth Circuit has further explained, that "employees who have different work responsibilities ... are not similarly situated."[125]

Plaintiff refers vaguely to a "younger employee" but does not identify this purported comparator in his brief or direct the Court to any supporting evidence, although he claims that, "[b]oth Guillory and Mr. Simmons testified that a younger employee who missed his shift was not summarily terminated like Simmons."[126]  In response, Defendant directs the Court to uncontroverted record evidence demonstrating that this "younger employee" missed shifts as a result of being in a very bad car accident that rendered him

---

[122] Rec. Doc. No. 25, p. 6.

[123] *See Horton v. G4S Secure Solutions (USA), Inc.*, No. 16-544-SDD-EWD, 2018 WL 1997535 at *5 (M.D. La Apr. 27, 2018)(citing *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F.Supp.2d 581, 593 (S.D. Tex. 2012); *see also Lopez v. Kempthorne,* 684 F. Supp. 2d 827, 856-57 (S.D. Tex. 2010)).

[124] *Id.* (quoting *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012)(quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009))).

[125] *Id.* (quoting *Lee*, 574 F.3d at 259 (citing *Wyvill v. United Cos. Life Ins.*, 212 F.3d 296, 302 (5th Cir. 2000))(emphasis added).

[126] *Id.*

Document Number: 58236

incapacitated.[127]  Thus, this employee is not a proper comparator as he was not treated more favorably under nearly identical circumstances.

Additionally, that McGee received a suspension and had several disciplinary write-ups "but never lost her job," is also irrelevant under this analysis.  First, McGee is not a proper comparator as she was Plaintiff's supervisor.  Second, there is no evidence that McGee failed to show up for a shift and failed to call in.  Thus, Plaintiff has failed to establish that younger employees were treated more favorably under nearly identical circumstances.

### e.  Departure from Policy & Procedures

Finally, the suggestion that Defendant departed from its standard policy and procedures is simply unsupported by the record evidence.  The Fifth Circuit holds that "a plaintiff can also show pretext by showing a departure from standard procedure. But mere deviations from policy, or a disagreement about how to apply company policy, do not show pretext."[128]  Further, "the ADEA does not 'protect older employees from erroneous or even arbitrary personnel decisions, but only from decisions which are unlawfully motivated.'"[129]  Thus, Plaintiff herein "must connect a departure from or misapplication of procedure to a discriminatory motive—an employer's 'disregard of its own hiring system does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is pretextual.'"[130]

---

[127] Guillory Deposition, p. 201, lines1-16.
[128] *McMichael*, 934 F.3d at 459 (citing *Campbell v. Zayo Grp., L.L.C.*, 656 F. App'x 711, 715 (5th Cir. 2016) (per curiam) (unpublished) (holding that "mere disagreement with [the employer's] application of the [reduction-in-force] policy, without more, does not provide substantial evidence of pretext")).
[129] *Id.* at 460 (quoting *Moss*, 610 F.3d at 926 (quoting *Bienkowski*, 851 F.2d at 1507–08)).
[130] *Id.*(quoting *Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989))
Document Number: 58236

Plaintiff posits:

> According to Ms. McGee, if an employee does not show up for the overnight shift, the security guard is required to notify the manager, Guillory, about the situation. If the security guard is unable to contact the manager, the security guard is then required to contact Ms. McGee and Ms. McGee is then required to report to work. However, regarding the matter in question, Ms. McGee was not informed about the staffing issue or the terminal's condition until she arrived for work at 7:00am that morning. Because Ms. McGee was not contacted, it is highly probable that that security guard successfully contacted Guillory long before 8:00am and that Guillory failed to follow Defendant's protocol which required that she report to work or notify Ms. McGee to do so. Moreover, in light of the fact that Guillory alleged that Mr. Simmons told her that he did not show up for work because he did not want to work weekends, an allegation that Ms. McGee flatly refutes, and the fact that March 20, 2017 fell on Monday, there is a high probability that Guillory is lying and accordingly her testimony should be completely disregarded in the Court's analysis.[131]

Notwithstanding the self-serving and unsupported conclusory statements in the above paragraph, Plaintiff also appears to read into McGee's testimony the existence of an "established protocol" of "requirements" that are not so explicitly or stringently declared by McGee. Moreover, there is no supporting or documentary evidence of an official policy or testimony by a corporate representative to establish that McGee's understanding of this protocol is, indeed, an established policy or procedure. McGee testified as follows:

A:      I would work the midnight shift only if somebody don't show up and they call me to come in.
Q:      I gotcha. And how would you – would that work if somebody doesn't show up and they call you. How does that work?
A:      I go to work.
Q:      I guess, if someone – you mentioned that you rarely work the midnight shift.
A:      Right.
Q:      And –
A:      It don't really happen a lot.

---

[131] *Id.* (citations omitted).
Document Number: 58236

| Q: | Right. And you also mentioned that when you work the midnight shift that it would be in a situation where someone didn't show up for work – |
|---|---|
| A: | Right. |
| Q: | -- and they would call you in. |
| A: | Right. |
| Q: | Okay. All right. First of all, who would call you to come in? |
| A: | Either the manager or either the security call to say that nobody showed up. |
| Q: | Okay. So it would either be the manager or the security guy? |
| A: | Yea. The security guard have to call the manager. And then they will call me if they can't connect with the manager to tell me nobody's there. |
| Q: | Okay. Okay and then that would – |
| A: | For me to come to work. |
| Q: | Okay. Go to work. And you wouldn't be happy about that. |
| A: | I'm fine with it. |
| Q: | Okay. |
| A: | Some days. |
| Q: | Some days. Okay. All right. And so it would – essentially, from your testimony, it's the security guard's responsibility to say, hey, nobody's here, and call the manager. And then the manager would call you? |
| A: | Yeah. And if they can't reach the manager – number is on the wall – they will call me, tell me, Ms. Betty, nobody showed up for work. So I get up and I comes to work.[132] |

Further, whether McGee was called or not pursuant to any protocols is irrelevant to the issue of whether Plaintiff violated company policy. Plaintiff has admitted that he violated this policy, and, given his work history, McGee's testimony does nothing to controvert or call into question the veracity of Guillory's statement that this violation was the final straw and cause for Plaintiff's termination. This alleged "departure," which is not established based on the above, would nevertheless be insufficient to support a finding of pretext.

---

[132] Rec. Doc. No. 26-1, McGee Deposition, p. 59, line 1, through p. 61, line16.
Document Number: 58236

Plaintiff also ostensibly argues that he should have received (yet another) verbal or written warning before being terminated. Not only has Plaintiff failed to present any summary judgment evidence demonstrating an established policy or protocol requiring this final warning, Plaintiff has likewise failed to demonstrate how any purported departure was attributable to his age rather than his conduct as an employee. Moreover, the record is replete with previous warnings and disciplinary write-ups received by the Plaintiff, and McGee's testimony does not establish any police or procedure requiring that Plaintiff receive yet another warning or counseling prior his termination for the admitted conduct.

Accordingly, because Plaintiff has failed to rebut Defendant's legitimate, nondiscriminatory reasons for his termination and failed to offer summary judgment evidence demonstrating materially disputed facts regarding pretext, summary judgment is proper in favor of Defendant on Plaintiff's claims.

### 4. Applicable Jurisprudence

On several occasions, the Fifth Circuit has held "that discrimination is less likely when the supervisor is in the same protected class as the plaintiff."[133] The record in this case establishes that Guillory was fifty-one (51) years old at the time of Plaintiff's termination, and Gray was sixty-eight (68) years old. Plaintiff has failed to controvert these facts. That Guillory and Gray were both in the same protected class as Plaintiff at the time of his termination makes discrimination less likely under applicable precedent.

---

[133] *Id.* (citing *Kelly v. Costco Wholesale Corp.*, 632 F. App'x 779, 783 (5th Cir. 2015) ("[The plaintiff's] membership in the same protected class as [the supervisor] bolsters the inference that age discrimination was not the *461 reason for his termination."); *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996), *abrogated on other grounds by Reeves*, 530 U.S. at 134, 120 S.Ct. 2097 (holding that, since the 58-year-old plaintiff was fired by his 60-year-old employer, there was an inference that "age discrimination was not the motive")).

Document Number: 58236

Additionally, this Court reached a similar conclusion in *Williams v. Clegg's Nursery*,[134] a case involving somewhat similar facts. In *Williams*, the plaintiff began working for Clegg's Nursery in 1982, and, in 2004, began being supervised by Farris. Although the plaintiff claimed that she and Farris enjoyed "a close, personal relationship" and a "good working relationship,"[135] in 2012, Farris recommended the plaintiff's termination to the owners.[136] The record demonstrated that the plaintiff had suffered numerous performance issues going as far back as 1997, including frequent tardiness and altercations with co-workers. The plaintiff did not dispute that she was late for work most of time.[137] Previous supervisors documented the plaintiff's problems with insubordination and with co-workers.[138] The plaintiff was ultimately terminated for performance issues and insubordination, and she sued her employer alleging, *inter alia*, that she was terminated because of her age.[139]

The plaintiff asserted that she was constantly subjected to condescending comments about her age, although she failed to present any evidence of such comments.[140] The Court acknowledged that the plaintiff's performance issues, tardiness, repeated problems with other co-workers, and insubordination to Farris were all legitimate nondiscriminatory reasons for her termination, noting that "[i]nsubordinate and disrespectful behavior to superiors along with intemperate behavior is a legitimate, nondiscriminatory reason for termination."[141]

---

[134] 2016 WL 3702978 (M.D. La. July 7, 2016).
[135] *Id.* at *1
[136] *Id.* at *2.
[137] *Id.* at *1.
[138] *Id.* at *2.
[139] *Id.*
[140] *Id.* at *5.
[141] *Id.* at *8 (citing *Shackelford v. Deloitte & Touche, L.L.P.*, 190 F.3d 398, 408 (5th Cir. 1999)).
Document Number: 58236

The Court also found that the plaintiff had failed to rebut any of the employer's legitimate, nondiscriminatory reasons for her termination:

> The pretext inquiry asks whether a jury could find that discrimination caused the adverse employment action. *Goudea*, 793 F.3d at 477. The evidence presented by the Defendant as to why Plaintiff was fired has not been refuted. Instead, Plaintiff admits to her performance problems, including the issues with other workers, frequent tardiness, and the comments directed at Farris concerning her son. Plaintiff further admits that employees over the age of 40 were given preferential treatment. Defendant has also produced evidence showing that since Farris has been manager, she has hired 15 employees over the age of 40.
>
> It appears from the record that Plaintiff had personal conflicts with other employees and Farris, as Plaintiff alleges all other employees were treated favorably. Plaintiff stated she felt as if none of her fellow employees liked her, and they were trying to get rid of her. (Doc. 45-5 at 23.) **Though this situation is unfortunate, personality conflicts between employees are not the business of the Federal Court.** *Vore v. Indiana Bell*, 32 F.3d 1161, 1162 (7th Cir. 1994).
>
> The Court finds that Plaintiff has failed to rebut the Defendant's legitimate, nondiscriminatory reasons for termination. Plaintiff has not created a genuine issue of fact with respect to whether age was the but-for cause of the Defendant's decision to terminate the Plaintiff.[142]

The reasoning and analysis set fort in *Williams v. Clegg's Nursery* applies to the present case.

Therefore, applying the law and jurisprudence to the undisputed facts and evidence presented in this case, the Court finds that Greyhound in entitled to summary judgment on Plaintiff's LADEA claim.

---

[142] *Id.* at *10 (emphasis added).
Document Number: 58236

## IV.    CONCLUSION

For the reasons set forth above, the *Motion for Summary Judgment*[143] by Defendant, Greyhound Lines, Inc. is GRANTED.   Plaintiff's case is dismissed with prejudice.   *Judgment* shall be entered accordingly.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 6th day of January, 2020.

_Shelly D. Dick_
_____
**SHELLY D. DICK**
**CHIEF DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**

---

[143] Rec. Doc. No. 15.
Document Number: 58236